RONALD VARIANO, APPELLANT, V. DIAL CORPORATION, APPELLEE.

589 N.W. 2d 845

Filed February 26, 1999.   No. S-98-712.

Thomas F. Dowd, of Dowd & Dowd, for appellant.

Thomas D. Wulff and Kevin L. Flynn, of Welch & Wulff, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In this workers' compensation case, each party claims the benefit of a rebuttable presumption pursuant to Neb. Rev. Stat. § 48-162.01 (Reissue 1998), based upon seemingly inconsistent opinions regarding loss of earning power expressed by the same court-appointed vocational rehabilitation counselor. We conclude that when considered together in their chronological sequence, the counselor's opinions establish a rebuttable presumption that the employee sustained a total loss of earning power as a result of his compensable injury and that the evidence is insufficient as a matter of law to rebut the presumption.

## FACTS AND PROCEDURAL BACKGROUND

On May 8, 1995, Ronald Variano sustained an injury to his back after lifting a 50-pound container during the course of his employment with Dial Corporation. He has not been employed since that time. Variano was examined by his primary care physician, Dr. Karen Stacey, on May 11, 1995. Dr. Stacey diagnosed a lumbar sacral back strain with right sciatica. While continuing with Variano's overall care, Dr. Stacey referred Variano to Dr. Richard Belatti for pain management and Drs. Frank P. LaMarte and D.M. Gammel for evaluation.

Variano was paid temporary total disability benefits from May 9, 1995, through November 11, 1996. On July 12, 1996, at the request of Variano and Dial's workers' compensation carrier, the workers' compensation court appointed Richard Metz, a vocational counselor, to determine the extent of Variano's loss of earning power. Metz submitted a report dated September 11, 1996 (hereinafter September report), in which he stated that Variano required vocational rehabilitation services and "will have sustained a loss of earning power of 25%-30%" as a result of his work-related injury. This report cited a 10-percent impairment rating given by Dr. Gammel and a 7-percent impairment rating from Dr. LaMarte. The report also identified, based on a functional capacity evaluation completed by Dr. Gammel on January 15, Variano's known functional restrictions and limitations.

After submitting the September report, Metz continued working toward identifying a specific vocational goal which would restore Variano to suitable work. Before completing this process, Metz requested clarification from Dr. Stacey concerning Variano's functional impairments and restrictions. Dr. Stacey eventually provided Metz with a physical capacities evaluation which differed slightly from the functional capacity evaluation completed by Dr. Gammel. After receiving this information from Dr. Stacey, Metz completed his vocational analysis and concluded in a February 23, 1997, letter report that Variano would not benefit from vocational rehabilitation.

On March 4, 1997, Variano's attorney wrote a letter to Metz, with a copy to Dial's workers' compensation carrier, requesting clarification of Metz' opinion regarding Variano's loss of earning power. The letter stated in relevant part:

> I familiarized myself with your report of September 11, 1996 and your recent letter of February 23, 1997. It appears from a review of the most recent letter that you have now concluded based on Dr. Stacey's functional restrictions and limitations that Mr. Variano is not able to engage in substantial competitive employment and that vocational rehabilitation would be of no benefit in this regard. In short, it appears that based on the limitations imposed by Dr. Stacey since your September 11, 1996 report, his loss of earning power is now 100% as opposed to the earlier opinion of 25-30%.

On March 28, 1997, Metz responded by letter (hereinafter March letter), stating in relevant part:

> It is my opinion that Mr. Variano would not be able to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality or attainments could do. While he could obtain trivial occasional employment under rare conditions and at small remuneration, I do not believe that vocational rehabilitation would do much, if anything, to improve that situation. Therefore, it is my opinion that he would not benefit from vocational rehabilitation services and is totally disabled as a result of his injury.

In your letter, you asked me to reconsider or to reevaluate the loss of earning power assessment which I had previously prepared. Unfortunately, I am unable to do so at this time. It has been the Court's policy to require the requestor to pay the costs associated with having the agreed upon or appointed counselor reassess or reconsider his previously submitted loss of earning power evaluation report. Therefore, unless Mr. Variano is willing to pay for any additional review or reconsideration of the loss of earning power evaluation—or Liberty Mutual insurance is willing to assume this expense—I am unable to honor your request. For me to do as you have requested and bill the insurer for this action would be unfair and contrary to the Court's policy regarding such action.

I hope I have answered your question and, at the same time, effectively explained why I am unable to go back and "rebut" my own loss of earning power evaluation.

At the time of his injury, Variano was earning $422 per week. Following his injury, he received temporary total disability benefits of $281.33 per week for 79 weeks. He then began receiving permanent partial disability benefits in the amount of $84.40 per week for 221 weeks based upon a 30-percent loss of earning power.

In reliance on the opinions expressed by Metz in his March letter, Variano filed a petition with the Workers' Compensation Court, requesting the payment of total disability benefits from and after November 12, 1996, plus a waiting penalty and attorney fees. Dial filed a third-party petition, asserting that the State of Nebraska, Second Injury Fund, was liable for a portion of Variano's claim on the basis of preexisting disabilities. The trial judge, relying on Metz' September report, found that Variano was not totally disabled and had sustained only a 30-percent loss of earning capacity. In addition, the trial judge found that Dial had failed to prove liability on the part of the Second Injury Fund and dismissed therefore its third-party claim. Variano requested review by a three-judge panel of the Workers' Compensation Court, which affirmed the trial court's findings. Variano perfected this appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the

caseloads of the appellate courts. Dial did not seek review of the trial court's order dismissing the Second Injury Fund, and accordingly, that issue is not before us.

## ASSIGNMENTS OF ERROR

Variano asserts, restated, that the Workers' Compensation Court erred factually and as a matter of law in disregarding the opinion of Metz that Variano was totally disabled.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1998), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Smart v. Scrivner/Food 4 Less*, 254 Neb. 111, 574 N.W.2d 505 (1998).

Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998).

## ANALYSIS

Section 48-162.01(1), which is a part of the Nebraska Workers' Compensation Act, states that "restoration of the injured employee to gainful employment" is one of the "primary purposes" of the act. To this end, the statute provides a means of determining a vocational rehabilitation plan for an injured worker, as well as his or her loss of earning power. See *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995). The Workers' Compensation Court is required to maintain a directory of public and private vocational rehabilitation service providers and counselors who have been approved by the court. § 48-162.01(2). The statute provides in part that "[n]o individual service provider or counselor shall be considered qualified unless he or she has satisfied the standards for certification established by the compensation court and has been certified by the compensation court." *Id.* The statute further states that if an

injured employee claims entitlement to vocational rehabilitation services, the employee and the employer or its insurer shall attempt to agree on the choice of a vocational rehabilitation counselor from the directory maintained by the compensation court. If no agreement is reached, the court is required to select a counselor from its directory, who shall then evaluate the employee and develop a rehabilitation plan if deemed necessary. § 48-162.01(3). The statute creates "a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation." *Id.* It also provides:

> Any loss-of-earning-power evaluation performed by a vocational rehabilitation counselor shall be performed by a counselor from the directory established pursuant to subsection (2) of this section and chosen or selected according to the procedures described in this subsection. It shall be a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct.

*Id.* This provision has been included in § 48-162.01 since its amendment operative January 1, 1994. See 1993 Neb. Laws, L.B. 757. See, also, *Stansbury v. HEP, Inc., supra.*

Under this statute, "the only opinion regarding vocational rehabilitation or loss of earning power entitled to a rebuttable presumption is that of a vocational rehabilitation counselor chosen or selected by the procedures set forth in [§ 48-162.01(3)]." *Stansbury v. HEP, Inc.*, 248 Neb. at 713, 539 N.W.2d at 35. In this case, that person is Metz, and our first task is to identify the opinion expressed by him to which the statutory presumption applies. The trial court did not make a finding with regard to the statutory presumption but characterized the case as one of "conflicting medical and expert vocational rehabilitation reports," constituting "evidence that would support any position." The trial court chose to rely upon the opinion expressed by Metz in his September report, that Variano had a 25- to 30-percent loss of earning capacity and was physically able to perform certain jobs identified in the September report.

On appeal, Variano argues that the rebuttable presumption attaches to the opinion Metz stated in his March letter, that Variano was "totally disabled as a result of his injury" and was unable to perform any work other than "trivial occasional employment under rare conditions and at small remuneration." He asserts that this opinion is not inconsistent with that contained in Metz' September report, but, rather, represented "a progression of testing which ultimately disclosed that instead of a 25-30% loss of earning capacity, Metz was dealing with an injured employee who was totally disabled because the vocational analysis disclosed there was no suitable competitive employment available for him." Brief for appellant at 10. Dial argues that the opinion stated in Metz' September report was the only opinion to which the presumption could apply because Metz specifically stated in his March letter that he could not reevaluate his prior loss of earning power assessment "unless Mr. Variano is willing to pay for any additional review or reconsideration of the loss of earning power evaluation—or Liberty Mutual Insurance is willing to assume this expense." In the alternative, Dial argues that if the presumption applies to Metz' March letter, it is rebutted by his previous opinion in the September report and the medical evidence. Finally, Dial argues that based upon its inherent power to determine loss of earning capacity, the compensation court "could have made its own determination with regard to Variano's loss of earning capacity if it so desired and completely ignored both the September 11, 1996 report and the March 1997 letter." Brief for appellee at 18.

We are persuaded that Variano's position is correct. The statutory presumption applies to an "opinion" resulting from a "loss-of-earning-power evaluation" conducted by a vocational rehabilitation expert selected or appointed pursuant to § 48-162.01. In his September report, Metz states:

> According to several physicians, Mr. Variano has reached maximum medical improvement for all of his work-related injuries[.] However, he has not been physically restored to a point where he is able to return to suitable work for which he has previous training and experience. Furthermore, Mr. Variano's employer is unable to accommodate the client's restrictions and limitations since

Dial Corp. has ceased its Omaha operations. Additionally, based upon this counselor's interpretation of the transferable skills analysis, it would appear that the client may not possess sufficient transferable skills which could result in suitable work (i.e., a position that "falls" within the client's physical restrictions and limitations and which pays at or near Mr. Variano's preinjury wage. *Therefore, it appears that the client is entitled to and requires vocational rehabilitation services.*

(Emphasis in original.) (Emphasis supplied.) Metz continues, "It is, therefore my opinion, based upon the aforementioned data, as well as my experience as a vocational rehabilitation counselor, that, as a result of his work related injuries, Mr. Variano *will have sustained* a loss of earning power of 25% - 30%." (Emphasis supplied.)

Clearly, this statement constitutes Metz' opinion up to that point in time of what Variano's loss of earning capacity would likely be after he received the vocational rehabilitation services which Metz then believed would benefit him. However, in a progress report for the period ending February 22, 1997, Metz described his unsuccessful efforts to identify suitable employment which would be consistent with Variano's physical restrictions. Metz reported that a "transferable skills analysis" was performed, that he " 'staffed' " Variano's case with two of Metz' colleagues, that he consulted with a Nebraska Job Service job placement counselor, and that he had an "OASYS run" completed. Metz concluded that "while Mr. Variano is employable in the general labor market, it does not appear that he can be restore [sic] to suitable work. Therefore, I feel he would not benefit from vocational rehabilitation, including formal retraining." This led to Metz' March letter to Variano's counsel in which he reiterated his opinion that Variano would not benefit from vocational rehabilitation services and was unable to perform anything other than "trivial occasional employment under rare conditions and at small remuneration." From the record, it appears that this was Metz' final opinion based upon his evaluation of Variano's potential for employment, which he had not completed at the time of his September report. The fact that the March letter was not contained in a report entitled "Loss of

Earning Power Evaluation," as was the opinion Metz expressed in the September report, does not alter its substance. Based upon our obligation to apply statutory language in accordance with its plain and ordinary meaning, see *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998), we construe the phrase "loss-of-earning-power evaluation" in § 48-162.01(3) to refer to a process as opposed to a document. The record reflects that the opinion stated by Metz in his March letter to Variano's counsel resulted from the evaluation *process* which was incomplete at the time of his September report. Whether intended or not, the March letter expresses an opinion reached by a court-appointed vocational rehabilitation counselor based upon his evaluation of a worker's loss of earning capacity, and neither the compensation court nor this court is free to disregard the opinion simply because of the format in which it was expressed. Thus, the trial court was required to afford the opinion expressed by Metz in the March letter the rebuttable presumption of correctness required by § 48-162.01(3).

A "rebuttable presumption" is generally defined as "[a] presumption that can be overturned upon the showing of sufficient proof." Black's Law Dictionary 1186 (6th ed. 1990). "In all cases not otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 1995). We hold that this rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to § 48-162.01(3) is correct.

We must next determine whether there is competent sufficient evidence to rebut the presumption. Contrary to Dial's contention, Metz' initial opinion concerning the extent of Variano's loss of earning capacity cannot rebut his final opinion because it was rendered prior to the completion of his evaluation. In the September report, Metz expressed his opinion regarding the loss of earning power which Variano "will have sustained" after receiving the vocational rehabilitation services which Metz then believed would be of benefit. In his March letter, Metz stated

his opinion regarding Variano's loss of earning capacity after concluding, on the basis of evaluations he performed subsequent to his previous report, that Variano would not benefit from vocational rehabilitation services, including formal retraining. Thus, his first opinion expressed in the September report was necessarily preliminary to the second opinion expressed in the March letter and cannot be deemed to rebut it.

This case is distinguishable from *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995), where we held that an opinion contained in a vocational rehabilitation plan could be rebutted by the author's contradictory opinion contained in the same plan. *Stansbury* is distinguishable for the additional reason that the vocational rehabilitation counselor who proposed the plan was not selected or appointed pursuant to § 48-162.01(3), and his opinion was therefore not entitled to a rebuttable presumption. Thus, while we held in *Stansbury* that the compensation court was free to disregard the opinions of the rehabilitation counselor, the same cannot be said in this case because of the statutory presumption which must be accepted unless rebutted. Likewise, no statutory presumption was involved in *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997), where we held that as the trier of fact, the compensation court was free to choose which, if any, expert to believe on the issue of causation.

Dial argues that Metz' final opinion was rebutted by evidence that the physical restrictions imposed upon Variano by Dr. Gammel were less than those established by Dr. Stacey, whose opinion Metz relied on to arrive at the opinion he expressed in the March letter. However, we have held that workers' compensation benefits awarded pursuant to Neb. Rev. Stat. § 48-121(2) (Reissue 1998) "are not measured by loss of bodily function, but by reduction in earning power or employability." *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 545, 288 N.W.2d 482, 485 (1980).

> "Earning power," as used in subsection (2) of § 48-121, is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the

employment in which he is engaged or for which he is fitted.

*Cords v. City of Lincoln*, 249 Neb. 748, 756, 545 N.W.2d 112, 118 (1996), citing *Sidel v. Travelers Ins. Co., supra.* We find no sufficient competent evidence in the record which would rebut the opinions concerning loss of earning power expressed by Metz in his March 28, 1997, letter to Variano's attorney. For this reason, we reverse, and remand to the Workers' Compensation Court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.