Jose Mauricio Rodriguez, appellant,
v. Monfort, Inc., appellee.

623 N.W. 2d 714

Filed March 13, 2001.   No. A-00-717.

Todd Bennett, of Rehm & Bennett, for appellant.

John R. Hoffert, of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

Hannon, Carlson, and Moore, Judges.

Hannon, Judge.

## INTRODUCTION

The Workers' Compensation Court awarded Jose Mauricio Rodriguez benefits against Monfort, Inc., for vocational rehabilitation as well as other benefits which are not disputed in this appeal. Monfort applied for review by a review panel, alleging

the trial judge erred in awarding vocational rehabilitation benefits and in not affording a rebuttable presumption to the court-appointed vocational rehabilitation counselor's opinion that vocational rehabilitation was not warranted. The review panel concluded Neb. Rev. Stat. § 48-162.01 (Reissue 1998) requires the trial judge to at least state the rationale for his rejection of the counselor's opinion, and therefore it remanded the case for further consideration. Rodriguez appeals, alleging that the review panel erred in (1) holding that the counselor's opinion was entitled to a rebuttable presumption and (2) overturning the trial judge's determination that Rodriguez was entitled to vocational rehabilitation. We find that (1) the counselor's opinion was entitled to a rebuttable presumption of correctness pursuant to § 48-162.01(3) in this case and (2) with respect to the counselor's opinion, the trial judge's opinion was not a well-reasoned decision as required by Workers' Comp. Ct. R. of Proc. 11 (1998), and that therefore the review panel was correct in remanding the case for the trial judge to state his reasons why the counselor's opinion was not given the statutory presumption or why that presumption was rebutted in this case. Accordingly, we affirm.

## BACKGROUND

On March 2, 1999, Rodriguez filed a workers' compensation claim against Monfort, alleging that he sustained an injury arising out of and in the course of his employment as a box thrower on May 21, 1997. Rodriguez sought temporary and permanent disability, payment of medical expenses, vocational rehabilitation, waiting-time penalties, attorney fees, and interest. Monfort disputed Rodriguez' claim, and the matter was tried on November 10, 1999.

Monfort hired Rodriguez on May 8, 1997, as a "box thrower." This position stacks boxes of meat weighing 75 to 100 pounds at a level above the shoulders. On May 21, Rodriguez began to have pain in his left elbow. While the pain in his left elbow was his initial complaint, Rodriguez later began to complain of pain in both shoulders as well. Rodriguez' treatment focused on these areas, and Monfort has not appealed the trial judge's determination that the injuries to Rodriguez' left elbow and both shoulders occurred in the course of and during his employment. We will not further

describe his injuries or treatment because the narrow issues on appeal pertain only to the counselor's reports and opinion.

Because of the physical limitations placed upon Rodriguez by his injuries and the medical restrictions prescribed by his doctors, Monfort assigned Rodriguez to the job of "clod opener." This job involved using a hook to turn cattle riding on a chain and then using a knife to make a "one foot" incision. Rodriguez testified that turning the cattle made his shoulders pop and crack. He further stated that he had to use a great deal of force to insert the knife and make the cut, and at times, the pain in his arms made him drop the knife. The motions were repetitive, and Rodriguez estimated he made approximately 5,000 cuts per hour. Accordingly, he testified that he did not believe he could continue working as a clod opener. Monfort moved Rodriguez from job to job in the plant; according to Rodriguez, most of the jobs were not within his medical and physical restrictions, and one of the main problems he had with his supervisor was that the supervisor assigned him to such jobs.

The evidence indicates a dispute as to whether the job of clod opener was within Rodriguez' abilities and restrictions. A physical therapist performed a jobsite analysis report on the job and indicated that it was appropriate and within Rodriguez' restrictions. The report noted that the cut appeared easy to make, requiring very little effort in movement. The report further commented that only the "handling portion" fell outside Rodriguez' work guidelines. The report concluded that in the therapist's best judgment, the minimal gripping to do the job would not aggravate Rodriguez' injuries.

The Workers' Compensation Court appointed Michelle Holtz as the vocational rehabilitation counselor in this case. Holtz met with Rodriguez on June 17, 1999, and with the assistance of an interpreter, conducted an initial evaluation and obtained information pertaining to Rodriguez' medical, educational, and work history. In a letter dated June 30, 1999, Holtz informed the parties' attorneys that their requests for services were inconsistent—while both parties requested a loss of earning power evaluation, Rodriguez' attorney also requested vocational testing with a report, initial vocational evaluation and rehabilitation recommendations, and vocational rehabilitation services. Holtz

stated that "it was [her] opinion that vocational rehabilitation services [were] not appropriate at this time due to the fact that Mr. Rodriguez is currently employed with Monfort in an alternate position that pays an hourly wage comparable to his pre-injury wage rate ($7.30 per hour)." Holtz closed her letter by stating that she would proceed with the loss of earning power evaluation unless the parties objected, but she also added that if Rodriguez' vocational status changed or if his doctors found his current job physically inappropriate, then vocational rehabilitation services would be initiated.

In a letter dated August 13, 1999, Holtz explained that the Workers' Compensation Court had asked her to provide vocational rehabilitation services and a loss of earning capacity evaluation based on Rodriguez' May 21, 1997, injury to his left elbow. Holtz requested clarification from the parties as to whether she was to consider the injuries to his shoulders in her analysis or whether she was to consider only those restrictions related to the left elbow injury. At that point, Holtz expressed her uncertainty as to whether Rodriguez was even entitled to a loss of earning capacity if she was to only consider the May 21 elbow injury. Holtz further stated that it appeared that vocational rehabilitation services were not necessary at that time because the jobsite analysis, which was apparently reviewed and approved by one of Rodriguez' doctors, listed his current job as falling within the restrictions of Rodriguez' key functional capacity assessment.

Holtz' August 24, 1999, report on her loss of earning capacity analysis on Rodriguez began with a summary of his background and medical history as well as his current status and functional restrictions. Holtz concluded that a loss of earning capacity assessment and vocational rehabilitation services were not warranted at that time because Rodriguez did not sustain a body as a whole injury on May 21, 1997. In a subsequent explanatory letter responding to Rodriguez' attorney, Holtz stated that the clod opener job was classified as a " '[v]ery Light' " job with " 'lifting of 10 pounds maximum and occasionally lifting and/or carrying small articles' " where reaching was done only on an occasional basis. The only lifting required was that of the knife.

In the trial judge's order filed December 16, 1999, he stated:

> I believe that [Rodriguez] has pain performing the position of a clod opener. I realize [the physical therapist] believes [Rodriguez] can perform the position but it is [Rodriguez] who is performing the position and due to the constant repetitive nature of the duties to make two cuts every 15 seconds, there is a basis for [Rodriguez] to have pain which I believe he has. I find that [Rodriguez] is entitled to rehabilitation services. Rehabilitation services need not begin until the problems that [Rodriguez] is having with his right hand is treated by Dr. Lesiak. This saves [Monfort] the cost of paying for rehabilitation services which at this time would be premature.

The above-quoted language, when supplemented by a four-sentence paragraph on wages and temporary total disability benefits, constitutes the entire analysis provided by the trial judge to support the award he provided to Rodriguez. The trial judge ordered (1) that Rodriguez receive temporary total disability benefits, (2) that Monfort pay future medical expenses including but not limited to surgery for Rodriguez' left elbow and both shoulders, and (3) that Rodriguez receive rehabilitation services as set forth in the trial judge's analysis.

Monfort appealed to a review panel of the Workers' Compensation Court alleging that the trial judge erred legally and factually in his award of vocational rehabilitation services and that the trial judge failed to accord the statutory rebuttable presumption of correctness to Holtz as the court-appointed vocational rehabilitation counselor, and requesting that the review panel reverse the award. In its order, the review panel stated it distilled Monfort's two assignments to a complaint that the trial judge failed to comply with § 48-162.01 by affording the counselor's opinion a rebuttable presumption. It reviewed the evidence and stated, "We believe the standard to require at a minimum a discussion by [the trial judge] setting forth his rational for rejecting the [counselor's] opinion," and therefore it remanded the case for further consideration by the trial judge.

Rodriguez now appeals to this court, and Monfort has not cross-appealed.

## ASSIGNMENTS OF ERROR

Rodriguez alleges that the review panel erred in (1) holding that the vocational rehabilitation counselor's opinion was entitled to a rebuttable presumption and (2) overturning the trial judge's determination that Rodriguez was entitled to vocational rehabilitation.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1998), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. . . .

Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations.

(Citations omitted.) *Variano v. Dial Corp.*, 256 Neb. 318, 322, 589 N.W.2d 845, 849 (1999).

## ANALYSIS

*Whether Entitled to Rebuttable Presumption.*

In his first assignment of error, Rodriguez argues that the review panel misapplied § 48-162.01(3) and therefore erred in finding that Holtz' opinion was entitled to a rebuttable presumption of correctness. Section 48-162.01(3) states in pertinent part:

An employee who has suffered an injury covered by the Nebraska Workers' Compensation Act shall be entitled to prompt medical and physical rehabilitation services. When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including job placement and retraining, as may be reasonably necessary to restore him or her to suitable employment.

. . . If [an employer and employee] are unable to agree on a vocational rehabilitation counselor, the employee or employer or his or her insurer shall notify the compensation court, and the compensation court shall select a counselor from the directory of vocational rehabilitation counselors established pursuant to subsection (2) of this section. . . . The vocational rehabilitation counselor so chosen or selected shall evaluate the employee and, if necessary, develop a vocational rehabilitation plan. *It shall be a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation.* . . . Any loss-of-earning-power evaluation performed by a vocational rehabilitation counselor shall be performed by a counselor from the directory established pursuant to subsection (2) of this section and chosen or selected according to the procedures described in this subsection. *It shall be a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct.*

(Emphasis supplied.) Rodriguez argues that Holtz' opinion is not entitled to the presumption because she did not develop a rehabilitation plan nor did she perform a loss of earning power evaluation.

We find Rodriguez' reading of the statute incorrect and therefore find his argument on this assignment without merit. The parties do not dispute that Holtz was an authorized court-appointed vocational rehabilitation counselor. Section 48-162.01(3) clearly gives the presumption of correctness to any rehabilitation plan given by a duly appointed counselor as well as any opinion of that counselor given as a result of a loss of earning power evaluation. See *Variano v. Dial Corp., supra.* Rodriguez argues that Holtz did not perform a final loss of earning capacity assessment and that therefore Holtz' opinions are not entitled to the statutory presumption. This argument is largely refuted by the conclusion in *Variano* that the loss of earning power evaluation under § 48-162.01(3) refers to the process as opposed to a single document. It seems clear that if the process results in a conclusion

that there is no loss of earning power, the opinions in connection with that conclusion are entitled to the statutory presumption. The argument is further refuted by a close reading of the statute. While at one point the statute speaks of rebuttable presumption for the vocational rehabilitation plan developed by the counselor, it also states, "It shall be a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct." Anyone reading Holtz' "Loss of Earning Capacity Analysis" and her three separate letters regarding Rodriguez' case would agree that Holtz' opinion that vocational rehabilitation was not warranted was expressed in connection with the appropriate process. We conclude that the presumption under the statute applies to her opinions in this case.

*Whether Entitled to Vocational Rehabilitation.*

Rodriguez also alleges that the review panel erred in reversing the award and remanding the case for further consideration of the applicability of the rebuttable presumption, essentially arguing that vocational rehabilitation is justified in this case. The trial judge's award refers to the physical demand assessment made by the physical therapist, which is included within the same exhibit as Holtz' report and correspondence, but the award does not express any consideration of Holtz' opinions. The trial judge also found that he believed Rodriguez' testimony that he had pain performing his duties as a clod opener. We cannot tell if the trial judge ignored the statutory presumption or concluded that it had been rebutted. We agree with the review panel that in respect to the rebuttable presumption, the trial judge's opinion is unsatisfactory. However, we will express our dissatisfaction in the words of the existing rules and case law.

Rule 11 provides:

All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

We conclude that this rule provides the standard by which the content of a Workers' Compensation Court trial judge's opinion must be measured. We also conclude that an opinion of the compensation court which does not mention and consider the applicability of a clearly, or even likely, applicable statutory presumption does not provide a basis for meaningful appellate review.

Upon appeal to this court, the parties argue the applicability of the presumption and whether the presumption was rebutted. It is impossible for the parties or this court to tell which was the basis of the trial judge's decision. In *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996), the Nebraska Supreme Court reversed the decisions of the review panel and the trial judge because it was not possible to determine whether the judge concluded that the evidence did or did not establish whether a certain condition was an occupational disease or whether the evidence established that the condition was caused by the employment. The court in *Hale* stated that without such findings, it could not make a meaningful review, and it further did not understand how the review panel could have done so either. See, also, *Owen v. American Hydraulic*, 254 Neb. 685, 578 N.W.2d 57 (1998); *Ross v. Baldwin Filters*, 5 Neb. App. 194, 557 N.W.2d 368 (1996). In both *Owen* and *Ross*, the review panel remanded the case to the Workers' Compensation Court trial judge for clear findings on important issues. In the instant case, we read the review panel's opinion as correctly concluding that it could not make a meaningful review without a trial judge's opinion which dealt with the statutory presumption provided in § 48-162.01(3).

We therefore refuse to consider the second error assigned by Rodriguez in this court and affirm the review panel's order remanding the case to the trial court for reconsideration under the statutes and for an opinion which complies with rule 11 of the Workers' Compensation Court.

AFFIRMED.