JOSE MAURICIO RODRIGUEZ, APPELLANT, V.
MONFORT, INC., APPELLEE.

635 N.W.2d 439

Filed November 9, 2001.    No. S-00-717.

Todd Bennett, of Rehm & Bennett, for appellant.

John R. Hoffert, of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Jose Mauricio Rodriguez, appellant, filed a petition with the Nebraska Workers' Compensation Court seeking workers' compensation benefits for injuries allegedly arising out of and in the course of his employment with Monfort, Inc. Following trial, the workers' compensation trial court entered an award in favor of Rodriguez, granting him, inter alia, vocational rehabilitation benefits as a result of his injuries. Monfort appealed the award to the review panel of the Nebraska Workers' Compensation Court. Monfort claimed that the court-appointed vocational rehabilitation counselor had opined that Rodriguez did not need vocational rehabilitation benefits and that the trial court had failed to afford the "opinions" of the court-appointed vocational rehabilitation counselor a rebuttable presumption of correctness. The review panel, with one judge dissenting, ordered the trial court to consider the applicability of the rebuttable presumption with regard to the vocational rehabilitation counselor's opinion. Rodriguez appealed the review panel's decision to the Nebraska Court of Appeals, which affirmed the review panel's decision. *Rodriguez v. Monfort, Inc.*, 10 Neb. App. 1, 623 N.W.2d 714 (2001). This court granted Rodriguez' petition for further review.

For the reasons stated below, we reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to remand the cause to the review panel with directions to affirm the trial court's award.

## STATEMENT OF FACTS

The relevant facts are not in dispute. On May 8, 1997, Rodriguez began working for Monfort as a box thrower, stacking 75- to 100-pound boxes of meat. On May 21, while performing his duties as a box thrower, Rodriguez began to experience pain in his left elbow. Rodriguez received medical treatment for this injury. Later, Rodriguez began to complain of pain in both of his shoulders. He received treatment for these injuries.

Because of his injuries, Rodriguez was reassigned to the position of "clod opener," in which position he used a knife to cut incisions in carcasses of meat which were moving on a chain in front of him. A physical therapist, Mike Kalvoda, conducted a jobsite analysis and stated in his report that the position was essentially within Rodriguez' physical restrictions. Rodriguez' treating physician, Dr. Frank Lesiak, concurred with this analysis.

On June 17, 1999, while Rodriguez was being treated for his work-related injuries, the Nebraska Workers' Compensation Court appointed a vocational rehabilitation counselor, Michelle Holtz, to provide Rodriguez with vocational rehabilitation services. In a letter dated June 30, 1999, Holtz informed Rodriguez' and Monfort's attorneys that "vocational rehabilitation services are not appropriate at this time due to the fact that Mr. Rodriguez is currently employed with Monfort in an alternate position that pays an hourly wage comparable to his pre-injury wage rate ($7.30 per hour)." In a letter dated August 13, 1999, Holtz stated that it appeared vocational rehabilitation services were unnecessary for Rodriguez because Kalvoda's jobsite analysis indicated Rodriguez' position as a clod opener was within his restrictions. In a report dated August 24, 1999, Holtz concluded that "vocational rehabilitation services are not warranted at this time due to the fact that Mr. Rodriguez is currently working at Monfort in the alternate position of [clod opener] which was approved by both Dr. Lesiak and Mr. Mike Kalvoda." Holtz further stated that no loss of earning capacity evaluation was appropriate for Rodriguez, because, as distinguished from an injury to the body as a whole for which loss of earning benefits are paid, Rodriguez had sustained an injury solely to a scheduled member. See Neb. Rev. Stat. § 48-121(2) and (3) (Reissue 1998).

On March 2, 1999, Rodriguez filed for workers' compensation benefits against Monfort. On November 10, Rodriguez' claim came on for hearing. During the trial, Rodriguez testified that performing the duties of the position of clod opener caused him shoulder pain and that he did not believe he could continue to perform the job.

In an award filed December 16, 1999, the workers' compensation trial court found that Rodriguez had suffered injuries arising out of and in the course of his employment with Monfort and

that as a result of his injuries, Rodriguez had sustained an 8-percent permanent impairment to his right upper extremity and a 10-percent permanent impairment to his left upper extremity. The court ordered Monfort to pay to Rodriguez medical and indemnity benefits.

With regard to vocational rehabilitation, the court, upon its review of the evidence, found that Rodriguez suffered pain while performing the job of clod opener. In the award, the trial court stated:

> I realize Mr. Kalvoda believes [Rodriguez] can perform the position but it is [Rodriguez] who is performing the position and due to the constant repetitive nature of the duties to make two cuts every 15 seconds, there is a basis for [Rodriguez] to have pain which I believe he has. I find that [Rodriguez] is entitled to rehabilitation services.

In awarding Rodriguez vocational rehabilitation services, the court did not reference or discuss Holtz' findings in her letters or report (hereafter reports).

Monfort applied for review by a Workers' Compensation Court review panel, claiming that the trial court erred in awarding vocational rehabilitation benefits and in not affording a rebuttable presumption to Holtz' "opinions" that vocational rehabilitation services were not warranted. Monfort did not challenge the trial court's findings with regard to Rodriguez' injuries, ratings, and medical and indemnity benefits, and these findings are not at issue in the present appeal.

In its order filed June 2, 2000, the review panel, with one judge dissenting, concluded that pursuant to Neb. Rev. Stat. § 48-162.01(3) (Cum. Supp. 2000) of the Nebraska workers' compensation statutes, the trial court must, at a minimum, state in the award the rationale for rejecting a vocational rehabilitation counselor's "opinion" with regard to vocational rehabilitation services. Section 48-162.01(3) provides, in pertinent part, as follows:

> If entitlement to vocational rehabilitation services is claimed by the employee, the employee and the employer or his or her insurer shall attempt to agree on the choice of a vocational rehabilitation counselor . . . . If they are unable to agree on a vocational rehabilitation counselor, the employee or employer or his or her insurer shall notify

the compensation court, and the compensation court shall select a counselor from the directory of vocational rehabilitation counselors . . . . The vocational rehabilitation counselor so chosen or selected shall evaluate the employee and, if necessary, develop and implement a vocational rehabilitation plan. *It is a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation. . . .* Any loss-of-earning-power evaluation performed by a vocational rehabilitation counselor shall be performed by a counselor from the directory established pursuant to subsection (2) of this section and chosen or selected according to the procedures described in this subsection. *It is a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct.*

(Emphasis supplied.) We note that since the trial in this case, § 48-162.01(3) has been amended, but such amendments have not affected the relevant portions of the statute for the purpose of this appeal. Based upon the language of § 48-162.01(3), the review panel ordered the trial court to consider the applicability of the rebuttable presumption to be accorded the vocational rehabilitation counselor's "opinion."

Rodriguez appealed the review panel's decision to the Court of Appeals, assigning as errors the review panel's decision (1) "in holding that the vocational rehabilitation counselor's opinion was entitled to a rebuttable presumption of correctness" and (2) "in failing to affirm the trial judge's determination that [Rodriguez] is entitled to vocational rehabilitation."

The Court of Appeals affirmed the review panel's decision, stating: "We conclude that the presumption under the statute applies to her opinions in this case." *Rodriguez v. Monfort, Inc.*, 10 Neb. App. 1, 8, 623 N.W.2d 714, 718 (2001). In affirming the review panel's decision, the Court of Appeals concluded that (1) the vocational rehabilitation counselor's "opinions" were entitled to a rebuttable presumption of correctness pursuant to § 48-162.01(3) and (2) the trial court failed to comply with Workers' Comp. Ct. R. of Proc. 11 (2000) when it rejected the

counselor's "opinions" without an explanation which dealt with the statutory presumption in § 48-162.01(3). Rule 11 provides:

All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

The Court of Appeals affirmed the review panel's decision ordering the trial court to reconsider in accordance with the statute and for a decision which complied with rule 11.

Rodriguez petitioned for further review of the Court of Appeals' decision. We granted the petition.

## ASSIGNMENTS OF ERROR

On further review, Rodriguez asserts, restated, that the Court of Appeals erred (1) in determining that Holtz' vocational rehabilitation reports were entitled to a rebuttable presumption of correctness and (2) in failing to determine whether there was sufficient competent evidence to support the trial court's award. Because we reverse the Court of Appeals' decision on the basis of the first assigned error, we need not discuss the second assigned error.

## STANDARDS OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Cum. Supp. 2000), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001); *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of

fact of the trial court which conducted the original hearing; the findings of fact of the trial court will not be disturbed on appeal unless clearly wrong. *Id.* Statutory interpretation presents a question of law. *City of Lincoln v. Nebraska Liquor Control Comm.*, 261 Neb. 783, 626 N.W.2d 518 (2001). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Fay v. Dowding, Dowding, supra*; *Logsdon v. ISCO Co., supra*.

## ANALYSIS

This appeal presents a question of statutory construction. It is well settled that when construing a statute, we must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *City of Lincoln v. Liquor Control Comm., supra*. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001).

We have previously recognized that § 48-162.01 "provides a means of determining a vocational rehabilitation plan for an injured worker, as well as his or her loss of earning power," in order to promote one of the primary purposes of the Nebraska Workers' Compensation Act, that is to restore the injured worker to gainful employment. *Variano v. Dial Corp.*, 256 Neb. 318, 322, 589 N.W.2d 845, 849 (1999). With regard to the procedure for securing vocational rehabilitation services, the statute provides that if an injured employee seeks such services, the employee and the employer or its insurer must try to agree on the appointment of a vocational rehabilitation counselor. § 48-162.01. If they are unable to agree, the Workers' Compensation Court will appoint a vocational rehabilitation counselor. *Id.*

As a means of furthering the goal of returning the injured employee to gainful employment, § 48-162.01 creates two rebuttable presumptions. "A 'rebuttable presumption' is generally defined as '[a] presumption that can be overturned upon the showing of sufficient proof.'" *Variano v. Dial Corp.*, 256 Neb. at 326, 589 N.W.2d at 851 (quoting Black's Law Dictionary 1186 (6th ed. 1990)).

With respect to rebuttable presumptions, § 48-162.01(3) first provides that "[i]t is a rebuttable presumption that any vocational rehabilitation plan developed by such vocational rehabilitation counselor and approved by a vocational rehabilitation specialist of the compensation court is an appropriate form of vocational rehabilitation" (vocational rehabilitation plan presumption of correctness). Second, § 48-162.01(3) states that with regard to a loss of earning capacity evaluation performed by the vocational rehabilitation counselor, "[i]t is a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct," *id.* (loss of earning capacity opinion presumption of correctness). The issue presented in the instant appeal is whether any reports issued by Holtz, as Rodriguez' vocational rehabilitation counselor, are entitled to either of the rebuttable presumptions of correctness contained in § 48-162.01(3).

*Vocational Rehabilitation Plan Presumption of Correctness.*

We first consider whether Holtz developed a vocational rehabilitation "plan" that under § 48-162.01(3) is entitled to a rebuttable presumption of correctness. Pursuant to the plain language of the statute, in order for the vocational rehabilitation plan presumption of correctness to attach, two conjunctive requirements must be met. First, the vocational rehabilitation counselor must develop a vocational rehabilitation "plan," and second, that plan must be submitted and approved by a vocational rehabilitation specialist of the Workers' Compensation Court.

In the instant case, Holtz did not develop a vocational rehabilitation "plan," and hence, there was no "plan" approved by a vocational rehabilitation specialist to which a rebuttable presumption of correctness under § 48-162.01(3) could attach. In her written reports, Holtz states that because Rodriguez had returned to work for Monfort in the new position of a clod

opener, vocational rehabilitation services were not necessary. Notwithstanding the content of Holtz' reports, Monfort argues that Holtz' reports to the effect that no rehabilitation services were necessary are, nevertheless, a "plan" entitled to a rebuttable presumption of correctness under § 48-162.01(3). In effect, Monfort argues that any analysis Holtz made with regard to vocational rehabilitation services is a "plan" entitled to a rebuttable presumption of correctness under the statute.

We decline to accept Monfort's interpretation of § 48-162.01(3). Under the rules of statutory construction, this court is obligated to give a statute its plain and ordinary meaning and must attempt to give effect to all parts of a statute. See, *City of Lincoln v. Liquor Control Comm.*, 261 Neb. 783, 626 N.W.2d 518 (2001); *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001). The plain meaning of "plan" includes "a detailed and systematic formulation of a . . . program of action." Webster's Third New International Dictionary, Unabridged 1729 (1993). It is undisputed that Holtz declined to formulate a program of action for Rodriguez. Holtz did not develop a plan.

■ Monfort's interpretation of § 48-162.01(3) would compel this court to ignore the plain meaning of "plan" and the language of the statute. The plain language of the statute requires both the submission of a plan by the vocational rehabilitation counselor and the approval of that plan by a Workers' Compensation Court vocational rehabilitation specialist in order for the plan to benefit from the rebuttable presumption of correctness set forth in § 48-162.01(3). Because Holtz did not develop a plan, Holtz' reports to the effect that Rodriguez did not require vocational rehabilitation services are not entitled to a rebuttable presumption of correctness under § 48-162.01(3). To the extent the Court of Appeals concluded that Holtz' reports stating that Rodriguez did not require vocational rehabilitation were a "plan" entitled to a rebuttable presumption of correctness under § 48-162.01(3), such a conclusion is error as a matter of law.

*Loss of Earning Capacity Opinion Presumption of Correctness.*
In its opinion affirming the review panel's order, the Court of Appeals relied upon the second rebuttable presumption of

correctness found in § 48-162.01(3), i.e., the loss of earning capacity opinion presumption of correctness. The Court of Appeals misconstrued the loss of earning capacity opinion presumption of correctness and incorrectly attached that presumption to Holtz' vocational rehabilitation report.

In reaching its decision to affirm the review panel's order, the Court of Appeals stated that its decision was mandated by our opinion in *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999).

Referring to *Variano*, according to the Court of Appeals, "[i]t seems clear [under § 48-162.01(3)] that if the [loss of earning capacity evaluation] process results in a conclusion that there is no loss of earning power, the opinions in connection with that conclusion are entitled to the statutory presumption." *Rodriguez v. Monfort, Inc.*, 10 Neb. App. 1, 7-8, 623 N.W.2d 714, 718 (2001).

The Court of Appeals misapplied our opinion in *Variano* and, as a matter of law, erred in its construction of § 48-162.01(3). In *Variano*, we were dealing with a succession of apparently inconsistent loss of earning capacity opinions expressed by the same court-appointed vocational rehabilitation counselor. We concluded that the series of letters written by the vocational rehabilitation counselor reflected the process during which the vocational. rehabilitation counselor evaluated Variano's loss of earning capacity. In *Variano*, we concluded it was the final letter in the process that reflected the vocational rehabilitation counselor's final opinion concerning Variano's loss of earning capacity. Accordingly, the vocational rehabilitation counselor's final letter in which he opined that Variano was totally disabled was an opinion entitled to the § 48-162.01(3) presumption of correctness regarding loss of earning capacity opinions.

On the facts of the case in *Variano,* we concluded that the vocational rehabilitation counselor's final letter was an opinion regarding Variano's loss of earning capacity and was entitled to a rebuttable presumption of correctness. In contrast, in the instant case, Holtz did not evaluate Rodriguez and never expressed an opinion concerning Rodriguez' loss of earning capacity. Indeed, in her August 24, 1999, report, she stated that a loss of earning capacity assessment was "not warranted." Having declined to evaluate Rodriguez' loss of earning capacity, Holtz has not

provided a loss of earning capacity opinion in the instant case from which to afford a rebuttable presumption of correctness. The Court of Appeals' decision to the contrary is in error.

Although not referenced by the parties in their briefs, we observe that the injuries Rodriguez sustained, which injuries are not in dispute, are injuries to his left and right upper extremities, i.e., scheduled member injuries. There is no claim in this case that Rodriguez sustained an injury to the body as a whole. The partial disabilities in this case are limited to scheduled members and are not subject to loss of earning capacity opinions. See, § 48-121(2) and (3); *Fenster v. Clark Bros. Sanitation*, 235 Neb. 336, 455 N.W.2d 169 (1990). Holtz properly declined to express an opinion concerning Rodriguez' loss of earning capacity.

Section 48-121 of the workers' compensation statutes sets forth the compensation schedule for workers' compensation injuries and provides, inter alia, as follows:

(2) For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter . . . .

(3) For disability resulting from permanent injury of the following classes, the compensation shall be . . . [f]or the loss of an arm, sixty-six and two-thirds percent of daily wages during two hundred twenty-five weeks.

Subsection (2) of § 48-121 provides for compensation based upon an injured worker's loss of earning capacity as a result of disability to the body as a whole. Subsection (2) specifically exempts disabilities listed in subsection (3) from such a loss of earning capacity analysis. Disabilities listed under subsection (3), referred to as scheduled member disabilities, are generally compensated according to the amounts provided by statute. See, *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991); *Fenster v. Clark Bros. Sanitation, supra.*

The trial court found that Rodriguez had sustained permanent partial injuries to his right and left upper extremities, or arms. There is sufficient evidence in the record to support this finding. Under Nebraska's workers' compensation statutes, an injury to the upper extremity constitutes a scheduled member injury. See

§ 48-121(3). See, also, *Fenster v. Clark Bros. Sanitation, supra* (injury to right arm constitutes scheduled injury rather than injury to body as whole); *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983) (same). Thus, in this case, any loss of earning capacity Rodriguez may have sustained as a result of the permanent partial disabilities to his arms is irrelevant for purposes of compensating his workers' compensation injuries, and Holtz properly declined to express an opinion regarding Rodriguez' loss of earning capacity. There was no loss of earning capacity opinion to which to afford a rebuttable presumption of correctness under § 48-162.01(3), and the conclusions of the review panel and the Court of Appeals to the contrary were in error.

## CONCLUSION

No vocational rehabilitation plan was prepared by Holtz and approved by a vocational rehabilitation specialist of the Workers' Compensation Court, and thus, there was no vocational rehabilitation plan to which the trial court should have afforded a rebuttable presumption of correctness. Holtz properly declined to evaluate Rodriguez' loss of earning capacity, and thus, there was no loss of earning capacity opinion expressed by the court-appointed vocational rehabilitation counselor to which the trial court should have assigned a rebuttable presumption of correctness. The review panel erred when it ordered the trial court to consider the rebuttable presumptions of correctness provided under § 48-162.01(3), and the Court of Appeals erred in affirming the review panel's decision.

For the reasons set forth herein, we reverse the decision of the Court of Appeals, and we remand the cause to the Court of Appeals with directions to remand the cause to the review panel with directions to affirm the award of the workers' compensation trial court.

REVERSED AND REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.