Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/26/2018 08:18 AM CDT

DAN KAISER, APPELLANT AND CROSS-APPELLEE,
v. METROPOLITAN UTILITIES DISTRICT,
APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed June 26, 2018.    No. A-17-686.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. ____: ____. On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless they are clearly wrong.

4. **Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

5. **Workers' Compensation: Appeal and Error.** With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.

6. **Workers' Compensation: Proof.** To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out

- 39 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

of and occurring in the course of employment caused an injury which resulted in disability compensable under the act.

7. **Workers' Compensation: Expert Witnesses.** Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability.

8. **Workers' Compensation: Appeal and Error.** The determination of causation is, ordinarily, a matter for the trier of fact, whose factual findings will not be set aside unless clearly wrong.

9. **Workers' Compensation: Notice.** Knowledge imputed to an employer can satisfy the notice requirement of Neb. Rev. Stat. § 48-133 (Reissue 2010).

10. ____: ____. When an employer's foreman, supervisor, or superintendent has knowledge of the employee's injury, that knowledge is imputed to the employer.

11. **Presumptions: Proof: Words and Phrases.** A rebuttable presumption is generally defined as a presumption that can be overturned upon the showing of sufficient proof.

12. **Workers' Compensation: Presumptions: Proof.** In all cases not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence. This rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010) is correct.

13. **Moot Question: Appeal and Error.** An appellate court need not reach any remaining assignment of error which is rendered moot by its decision to reverse, and remand for further proceedings.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed in part, and in part reversed and remanded with direction.

James E. Harris and Britany S. Shotkoski, of Harris & Associates, P.C., L.L.O., for appellant.

Thomas D. Wulff, of Law Office of Thomas D. Wulff, P.C., and Mark Mendenhall, of Metropolitan Utilities District, for appellee.

Moore, Chief Judge, and Pirtle and Arterburn, Judges.

- 40 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

Arterburn, Judge.

## I. INTRODUCTION

Dan Kaiser appeals and Metropolitan Utilities District (MUD) cross-appeals from an order entered by the Nebraska Workers' Compensation Court finding Kaiser had suffered a work-related injury, awarding a 70-percent loss of earning capacity, and finding him entitled to 300 weeks of permanent partial disability benefits and 43.1429 weeks of temporary total disability benefits. On appeal, Kaiser argues the compensation court erred in failing to find him to have suffered a 100-percent loss of earning capacity and in failing to find him to be totally disabled. On cross-appeal, MUD argues the compensation court erred in finding Kaiser suffered an accident and injury arising out of the scope of his employment and in finding Kaiser gave adequate notice of his alleged injury under the workers' compensation statutes. For the reasons set forth below, we affirm in part, and in part reverse and remand with direction.

## II. BACKGROUND

On March 10, 2015, Kaiser was employed by MUD as a gas plant engineer. Kaiser alleges that on March 10, he injured his lower back lifting a 150-pound toolbox by himself at a MUD facility. Kaiser continued to work for the remainder of the day. He returned to the main MUD facility and informed Joe Pawoll that he had injured his back while working that day. Pawoll was the senior maintenance mechanic who routinely assigned work duties and ensured that employees' work, including Kaiser's work, was performed correctly. Pawoll told Kaiser that he should inform Thomas Costello, the person designated by MUD as Kaiser's supervisor, about his injury. Kaiser was unable to find Costello and speak with him that day.

Kaiser visited the office of Dr. Mark Shirley, his longstanding family practice physician, on March 11, 2015, in order to receive a testosterone treatment. Kaiser did not see Dr. Shirley that day, because a nurse performed the injection procedure.

- 41 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

Kaiser then saw his chiropractor, Dr. Marshall Jacobs, on March 12. No mention of his workplace injury is mentioned in Dr. Jacobs' reports; however, Kaiser testified that he did mention the injury to Dr. Jacobs on that day.

On March 17, 2015, Kaiser had an office visit with Dr. John Cook at a pain clinic. Kaiser was there for a medication refill, and he informed the staff that he had injured his lower back while at work. He reported that his pain level was a 6 out of 10, when at his last visit to Dr. Cook on February 20, he had reported his pain level at 0 out of 10.

Kaiser has had a long history of back pain prior to his alleged workplace injury. We will not recount every medical record or procedure, but Kaiser has been receiving treatment for back pain on an ongoing basis since 2002. The longest gap in treatment appears to be in 2011. Dr. Shirley diagnosed Kaiser with thoracic spine pain, para lumbar spasm, and lumbar spine pain in January 2002. Dr. Shirley also noted right lower extremity and interior thigh discomfort and radiculopathy in his left leg. Kaiser was treated continuously by Dr. Shirley through 2015, with the noted exception above.

Kaiser was treated by Dr. James Devney beginning in 2006. Dr. Devney diagnosed Kaiser with chronic low-back pain, degenerative disk disease, lumbar disk herniation, lumbar spinal stenosis, and lumbar radiculitis on the left side. Kaiser was treated by Dr. Devney from 2006 to 2009, and Kaiser received repeated epidural steroid injections in his lumbar spine.

Kaiser visited Dr. Peter Lennarson in 2010 for low-back pain and left leg pain. Dr. Lennarson agreed with Dr. Devney's previous diagnoses and believed surgical intervention may be required in the future, but recommended continuing treatment with Kaiser's other doctors.

Kaiser subsequently began treating with Dr. Cook at the pain clinic in 2012. Dr. Cook diagnosed Kaiser with opioid dependence, lumbar radiculitis, and lumbar facet disease. Dr. Cook prescribed medication to end Kaiser's opioid dependence and began treating Kaiser with a number of different therapies

- 42 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

to relieve his low-back pain. Kaiser was treated by Dr. Cook through 2015.

In 2014, Kaiser underwent a gastric bypass surgery. He weighed approximately 360 pounds at the time of the surgery. Kaiser testified that after the surgery, his low-back pain had greatly subsided and he was able to perform more physical activities. By 2015, Dr. Cook noted that Kaiser's weight had dropped to 250 pounds and that Kaiser reported little to no low-back pain. However, Kaiser's chiropractor, Dr. Jacobs, noted in December 2014 that Kaiser reported his low-back pain to be "moderate to severe."

Kaiser continued to treat with Dr. Cook regularly through June 2015. He complained of constant low-back pain following the alleged March 10 injury. On June 22, Dr. Shirley took Kaiser off work due to "worsening" pain. Kaiser was referred to Dr. John Hain, a neurologist, on June 23. Dr. Hain reviewed Kaiser's medical records, examined his previous MRI's, and determined that Kaiser had "3 levels of degeneration [and] severe spinal stenosis [at multiple levels]." Dr. Hain recommended "decompression at all three levels" and a L3-S1 spinal fusion. Dr. Hain performed the recommended surgery on July 17.

In a report dated August 5, 2016, Dr. Hain opined that the alleged work-related back injury Kaiser suffered on March 10, 2015, was causally related to the need for Kaiser's July 17 surgery. Dr. Hain also opined that the acute changes in Kaiser's medical condition and MRI results were related to the alleged work-related injury. Dr. Shirley agreed with Dr. Hain's conclusion that Kaiser's injury was caused by lifting the 150-pound toolbox.

MUD provided Kaiser's medical records to Dr. Chris Cornett in order to provide a medical opinion as to whether Kaiser's medical condition was related to the alleged work-related injury. Dr. Cornett stated that Kaiser had a multiyear history of significant back and radicular leg pain into one or the other leg. He reviewed the MRI's of Kaiser, comparing the ones from before the March 2015 accident to the one done after the

March 2015 accident and stated that Kaiser had "no new large herniations, no fractures and I do not think given his multi-year history of similar problems that his work condition had any permanent affect or permanent change on his spine condition." Dr. Cornett ultimately opined that the two March incidents could have temporarily aggravated Kaiser's preexisting condition, but did not permanently injure Kaiser.

A functional capacity evaluation (FCE) was completed on Kaiser on March 18, 2016. The FCE concluded that Kaiser could "safely lift 55 pounds from 4-inch level and 80 pounds from the crate handles . . . to waist level and 60 pounds to shoulder level on an occasional basis." He safely pushed 180 pounds and pulled 205 pounds. Kaiser did not meet the requirements for working beyond the medium demand classification.

Michael Newman served as the parties' agreed-upon vocational rehabilitation counselor. Newman authored a report dated August 1, 2016. Newman determined that Kaiser's restrictions were appropriate and opined that he had sustained a 70- to 75-percent loss of earning capacity due to his work-related injury. Newman concluded his report with the following: "If this information proves to be untrue, substantially in error, or new information comes to light I reserve the right to amend my opinions accordingly."

Dr. Hain endorsed the results of the FCE in a letter dated April 19, 2016. In a June 6 "Physician's Statement," Dr. Shirley referred to the FCE report for some of his responses on the form. This form is not complete, but appeared to the compensation court to be part of a claim for an insurance disability policy.

Dr. Shirley authored a report dated October 28, 2016, on Kaiser's medical condition. Dr. Shirley wrote that he disagreed with the results of the FCE, stating that Kaiser should be limited to "light sedentary level, with a maximum lifting capacity of no more than 20 pounds on an occasional basis." He went on to write that Kaiser should "avoid any repetitive bending, twisting, turning, and carrying any amount of weight

- 44 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

on uneven surfaces, up or down stairways." Dr. Shirley concluded by writing that Kaiser "should be limited to no more than a four hour workday. This should include break periods of ten minutes every couple of hours. He should also be given the opportunity to change positions from sitting to standing every fifteen minutes."

Newman authored a supplemental report dated November 9, 2016. Newman stated that he had reviewed additional records, including the reports by Drs. Hain and Shirley. He believed that Dr. Shirley's report was "vocationally significant" and determined that Kaiser had "no measurable earning power at the medium, light or sedentary physical demand level."

After trial, the compensation court issued its findings in a written order. The court found that on March 10, 2015, Kaiser suffered a work-related injury. Kaiser had given sufficient notice to MUD through notifying Pawoll. He was entitled to temporary total disability and permanent partial disability. Kaiser was not entitled to an award of future medical care or attorney fees. His cause of action related to any alleged injury occurring on March 20, 2015, was dismissed with prejudice. Regarding its disability award, the compensation court issued the following findings:

The Court has considered all the evidence and the testimony of [Kaiser], his wife and Allen. The Court finds [Kaiser] has suffered a 70% loss of earning capacity as opined by Newman. The Court finds the restrictions set forth in the FCE are the appropriate restrictions for [Kaiser]. The Court so finds for two reasons. First, both Dr. Hain and Dr. Shirley endorsed the result of the FCE, which were deemed valid. Dr. Shirley withdrew his endorsement of the FCE but never explained why. Obviously, at one point, the result of the FCE seemed reasonable to him. What changed? Without any explanation for the change in position by Dr. Shirley, the Court is reticent to side with his more stringent restrictions set forth in Exhibit 3. The results of the FCE were deemed

- 45 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

valid and adopted by the treating surgeon, which seems both impartial and objective.

Secondly, the Court believes [Kaiser] can work. [Kaiser] told Newman his pain is a 3 out of l0 without activity and that he has constant low back pain and leg pain. . . . It should be noted that [Kaiser] remained employed by [MUD] while suffering from chronic back pain from 2002 until June of 2015. [Kaiser] has worked with pain for years. He has worked with leg pain, and he has worked with back pain. In the many years prior to his accident and while still remaining employed, [Kaiser's] pain has been called "excruciating," rated as high as a 7 out of 10 and been described as "constant" and "chronic." [Kaiser] continued to work for [MUD] while admittedly "babying his back." . . . The crux of this evidence is that [Kaiser] is capable of working and has experience in working with self-imposed restrictions and through pain. Based upon the opinion of Dr. Hain, the opinion of Newman, and the preponderance of the evidence, the Court finds [Kaiser] suffered a 70% loss of earning capacity. [Kaiser] is entitled to PPD benefits at the rate of $742.25 starting on April 19, 2016 and continuing for so long until [Kaiser] has been paid 300 weeks of indemnity benefits, which includes the 43.1429 weeks of TTD benefits awarded to [Kaiser] earlier in this paragraph.

Kaiser appeals and MUD cross-appeals from that order.

## III. ASSIGNMENTS OF ERROR

Kaiser argues the compensation court erred in failing to find him to have suffered a 100-percent loss of earning capacity and in failing to find him to be totally disabled. On cross-appeal, MUD argues the compensation court erred in finding Kaiser suffered an accident and injury arising out of the scope of his employment and in finding Kaiser gave adequate notice of his alleged injury under the workers' compensation statutes.

- 46 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

## IV. STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

[2-5] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.* On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless they are clearly wrong. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.* With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012).

## V. ANALYSIS

We will first address MUD's cross-appeal, because the issues raised necessarily would preclude a reversal of the compensation court's award to Kaiser. We will then address Kaiser's issues raised on appeal.

- 47 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

## 1. MUD's Cross-Appeal

### (a) Finding of Work-Related Injury

MUD argues that the compensation court erred in finding that Kaiser had suffered a work-related injury on March 10, 2015. MUD argues that Kaiser had a long history of low-back pain and that his medical condition simply progressed, rather than being caused by an acute injury.

[6,7] To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment caused an injury which resulted in disability compensable under the act. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability. *Id.*

[8] The determination of causation is, ordinarily, a matter for the trier of fact, whose factual findings will not be set aside unless clearly wrong. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996). We cannot say the court was clearly wrong in concluding the evidence established that Kaiser had suffered a work-related injury to his lower back. The compensation court, after a detailed review of the medical evidence, concluded as follows:

> In total, the medical records from Drs. Cook, Jacobs, Shirley and Devney support Dr. Hain's opinion that [Kaiser's] preexisting condition was aggravated or made worse as a result of the accident on March 10, 2015. The medical records also generally support [Kaiser's] testimony that his back was improved after his bariatric surgery. These facts support the conclusion that [Kaiser] suffered a new injury with new symptoms and resulting disability as a result of the accident on March 10, 2015. Dr. Hain opined that while [Kaiser] had some long-standing back pain prior to March 10, 2015, the accident

- 48 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

on March 10, 2015 aggravated, exacerbated or combined with his preexisting condition in his lumbar spine to make his condition worse so as to necessitate surgery. . . . Dr. Hain's opinion regarding causation meets the standard set forth by the Nebraska Supreme Court in Spangler v. State . . . .

. . . .

The Court finds that on March 10, 2015, [Kaiser] suffered an accident arising out of and in the course of his employment with [MUD] resulting in an injury to his low back (specifically an aggravation of his preexisting degenerative disc disease from L3 to Sl). The Court relied on the opinions of Drs. Hain and Shirley to so find.

Based on the record before us, we conclude that the evidence supports the findings of the compensation court. We find the compensation court did not err in finding that Kaiser had suffered a work-related injury on March 10, 2015, which aggravated his preexisting degenerative disk disease.

### (b) Requisite Notice

MUD argues that Kaiser did not provide sufficient notice of his work-related injury in accordance with MUD's policy regarding suspected work-related accidents or injuries. MUD argues that Pawoll was not a supervisor, since he did not have the authority to grant vacations, conduct employee reviews, grant time off of work, discipline employees, or give awards.

[9,10] Neb. Rev. Stat. § 48-133 (Reissue 2010) provides, "No proceedings for compensation for an injury under the Nebraska Workers' Compensation Act shall be maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof . . . ." Knowledge imputed to an employer can satisfy the notice requirement of § 48-133. *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009). When an employer's foreman, supervisor, or superintendent has knowledge of the employee's injury, that knowledge is imputed to the employer. *Id.* The compensation court found that Kaiser's notice to Pawoll constituted notice

- 49 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

under the act. Evidence was adduced that Kaiser considered Pawoll to be his supervisor. Pawoll routinely assigned work to employees and ensured the work was satisfactorily completed. Employees were instructed to follow Pawoll's directions. The evidence further established that Pawoll would act as foreman in the absence of Costello, the person designated by MUD as Kaiser's supervisor. The evidence demonstrates that on Pawoll's advice, Kaiser looked for Costello on the date of the injury, but could not find him. Based upon our review of the record, we find that the compensation court was not clearly wrong in its determination that Kaiser provided adequate notice of his work-related injury to MUD.

## 2. KAISER'S APPEAL

### (a) Loss of Earning Capacity

Kaiser argues the compensation court erred in failing to give a rebuttable presumption of correctness to the final loss of earning power report of Newman, the agreed-upon vocational rehabilitation counselor. He argues that this report included the final opinions of Drs. Shirley and Hain, which led to Newman's supplementing his first report.

Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010) provides in relevant part:

> If entitlement to vocational rehabilitation services is claimed by the employee, the employee and the employer or his or her insurer shall attempt to agree on the choice of a vocational rehabilitation counselor . . . . Any loss-of-earning-power evaluation performed by a vocational rehabilitation counselor shall be performed by a counselor . . . according to the procedures described in this subsection. It is a rebuttable presumption that any opinion expressed as the result of such a loss-of-earning-power evaluation is correct.

[11,12] A "'rebuttable presumption'" is generally defined as a presumption that can be overturned upon the showing of sufficient proof. *Variano v. Dial Corp.*, 256 Neb. 318, 326, 589

- 50 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

N.W.2d 845, 851 (1999). In all cases not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence. *Id.* The Nebraska Supreme Court held that this rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to § 48-162.01(3) is correct. *Variano, supra.*

In *Variano*, the Supreme Court considered a factual scenario much like the present case. A vocational rehabilitation counselor prepared a loss of earning capacity report based on the impairment ratings of two doctors and an FCE. The vocational rehabilitation counselor's initial report stated that the employee "'will have sustained'" a 25- to 30-percent loss of earning power after receiving vocational rehabilitation. *Id.* at 326, 589 N.W.2d at 851. After issuing this report, the vocational rehabilitation counselor received clarifying information from the employee's treating physician, and in a letter to the employee's attorney, the vocational rehabilitation counselor concluded that the employee was totally disabled. The trial court relied on the initial report in reaching its conclusion that the claimant had sustained a 30-percent loss of earning capacity. The Supreme Court reversed. The court found "the phrase 'loss-of-earning-power evaluation' in § 48-162.01(3) to refer to a process as opposed to a document." *Variano*, 256 Neb. at 326, 589 N.W.2d at 851. As such, the letter that followed the initial report was part of this previously "incomplete" evaluation process. *Id.* The court found that the subsequent letter was therefore entitled to the rebuttable presumption of correctness. Finding no evidence in the record which could rebut the final opinion expressed by the vocational rehabilitation counselor, the court found that the trial court erred in not finding that the claimant's loss of earning power was total.

We find *Variano* to be applicable in this matter. Newman's first report concluded that Kaiser's restrictions were appropriate

- 51 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

and opined that he had sustained a 70- to 75-percent loss of earning capacity due to his work-related injury. Newman concluded his report with the following: "If this information proves to be untrue, substantially in error, or new information comes to light I reserve the right to amend my opinions accordingly." Thereafter, Newman received the additional reports authored by Drs. Shirley and Hain. Newman then issued his supplemental letter finding Kaiser to have sustained a 100-percent loss of earning capacity. Therefore, as was the case in *Variano*, we must find that Newman's second report was entitled to the rebuttable presumption analysis. MUD argues, and the trial court agreed, that the issue comes down to which expert should be credited in determining what capabilities Kaiser had demonstrated. The trial court clearly questioned Dr. Shirley's apparent change of opinion from the answers given on a questionnaire as part of Kaiser's application for long-term disability benefits on June 6, 2016, until his written report issued on October 28. In the questionnaire, Dr. Shirley referenced the FCE when inquiry was made about Kaiser's physical restrictions. However, in the October report, he found that Kaiser's restrictions and limitations were much more severe. The trial court asked, "What changed?" It then found that the lack of explanation by Dr. Shirley for his change of position made the court reticent to side with the more stringent restrictions.

In *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999), a similar argument was made. The employer argued that the vocational rehabilitation counselor's final opinion was rebutted by the evidence of physical restrictions given by some of the medical experts. The Supreme Court held, however, that "workers' compensation benefits . . . 'are not measured by loss of bodily function, but by reduction in earning power or employability.'" *Id.* at 327, 589 N.W.2d at 852 (citing *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980)). The court then held that no sufficient competent evidence existed in the record to rebut the opinions of the vocational rehabilitation counselor as to earning power.

- 52 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
KAISER v. METROPOLITAN UTIL. DIST.
Cite as 26 Neb. App. 38

In this case, it is apparent that Newman, the vocational rehabilitation counselor, relied on the October 2016 opinion of Dr. Shirley to reach the conclusions he made in his November letter. While contrasting opinions exist in the record as to Kaiser's physical restrictions, the only evidence in the record as to earning capacity is Newman's opinion. Much like in *Variano, supra*, we can find no competent evidence herein which would rebut Newman's final opinion. For this reason, we reverse, and remand to the compensation court with the direction that the compensation court find that Kaiser sustained a 100-percent loss of earning capacity.

### (b) Kaiser's Ability to Work

[13] Kaiser argues that the compensation court erred in its finding that he was not totally disabled based on the court's belief that Kaiser was able to work while in pain. We need not reach Kaiser's remaining assignment of error, which is rendered moot by our decision to reverse, and remand with direction on the foregoing issue. See *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010).

### VI. CONCLUSION

We conclude that the compensation court did not err in finding Kaiser to have suffered a work-related injury. Additionally, we find that the court did not err in finding that Kaiser provided sufficient notice under the statutes. We find the compensation court did err in not finding Kaiser to have sustained a 100-percent loss of earning capacity due to his injury, and we reverse the finding of the compensation court and remand the cause with direction to find that Kaiser sustained a 100-percent loss of earning capacity.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.