IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SELLERS V. REEFER SYSTEMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

WILLIAM SELLERS, APPELLEE,

V.

REEFER SYSTEMS, INC., APPELLANT.

Filed October 8, 2019.    No. A-19-082.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

Tanya J. Hansen, of Smith, Johnson, Baack, Placzek, Allen, Connick & Hansen, for appellant.

Joel D. Nelson, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Reefer Systems, Inc., appeals the Workers' Compensation Court's award finding that William Sellers was an odd-lot worker and consequently awarding him permanent total disability benefits. Based on our review of the record, we affirm.

## BACKGROUND

Sellers was working for Reefer Systems in 2007 when he suffered two separate injuries during the course of his employment. In March, Sellers injured his back when he fell from a railroad car he was cleaning. In December, he injured his knee while he was cleaning a railroad car.

Following his injuries, Sellers continued working for Reefer Systems until he was terminated for failing a drug test in 2008. He subsequently filed a workers' compensation claim, and in February 2011, the compensation court entered an award, finding that the lower back, left hip, and left knee injuries were compensable, and awarded indemnity and medical benefits, including future medical care for his lower back, left hip, and left knee.

In June 2014, a functional capacity evaluation (FCE) was completed for Sellers. According to the FCE, Sellers could sit for 8 hours during the work day, stand for 4 hours with regular breaks, and walk for 5-6 hours. Additionally, it was determined that Sellers could lift more than 35 pounds occasionally and 19 pounds frequently, and could frequently carry objects weighing more than 25 pounds.

Sellers filed another petition with the compensation court in September 2014, alleging that he was currently temporarily totally disabled and seeking payment from Reefer Systems for lumbar spine surgery. The compensation court ordered Reefer Systems to pay for the spine surgery and to continue to pay temporary benefits. In April 2016, Sellers filed another petition, claiming that he was permanently and totally disabled due to the original injuries.

In September 2016, the compensation court granted Sellers' request for appointment of a vocational rehabilitation counselor to prepare a loss of earning power report. The court appointed Ronald Schmidt as the vocational rehabilitation counselor.

Schmidt's report, dated December 2016, stated that Sellers was 68 years old (Sellers however was born in 1950), had a high school education, had attended some college and then earned a welding certificate, and was a "one-finger typist." The report noted that Sellers worked in a supervisory role for Reefer Systems from 2005-2008, and prior to that he had worked at a warehouse in Lincoln for 10 years. At the time of the report, Sellers reported that he could lift 20 pounds occasionally, sit or stand for an hour to an hour and a half, walk for a half mile, and stoop, bend, and kneel. Schmidt also noted that Sellers was approved for back surgery but had not had the procedure, and that he took Oxycodone to manage his pain. He concluded that Sellers had lost between 35 and 40 percent of his earning power, and he could work as a cashier, security guard, counter clerk, production worker, or information clerk/greeter.

In July 2017, Sellers saw Dr. Douglas Beard, a spine surgeon. Beard wrote a letter to Dr. Jeffrey Brittan, Sellers' primary care physician, indicating that Sellers' condition was worsening, and that he could not walk more than two blocks at a time. Beard noted that Sellers was taking Oxycodone multiple times a day for his back pain. He concluded his letter by stating that Sellers agreed to undergo surgery for his back and that surgery was scheduled for August 2017.

In June 2018, the compensation court held a hearing on Sellers' petition seeking permanent total disability benefits. Sellers was the only witness to testify. He stated that he was 68 years old and resided in North Platte. At the time of the hearing, Sellers continued to have pain in his low back, and he took 3 or 4 Oxycodone pills a day to manage the pain. He stated that the medication made him feel "droggy," or like he had a hangover. His back pain prevented him from lifting heavy objects, doing much around the house, sitting or standing more than a half hour at a time, and walking more than a half mile.

Sellers testified that, although he was approved for back surgery, he had not had the surgery because he was concerned about its effectiveness and the potential risks. Sellers also was

diagnosed with prostate cancer and, at the time of trial, was discussing potential treatment options with his doctor. In addition to his back pain, Sellers suffered from a torn rotator cuff, a pinched nerve, and knee and foot pain. He stated that even with his pain medication he sleeps less than 4 hours per night.

Sellers confirmed that he graduated high school, completed some college and vocational training, and earned a welding certificate. Although Sellers owned a computer, he did not use it often and did not use any touch screen devices. Sellers stated that it had been over 20 years since he learned an on-the-job skill. He indicated that he was not able to physically perform the work that he did when he worked for Reefer Systems. He also stated that he could not physically work in construction, at a warehouse, as a welder, or for Union Pacific, all jobs he once held, due to his back pain. Sellers testified that he worked in telemarketing over 25 years prior to trial, but did not think he could currently work as a telemarketer because he did not know how to use computers or technology.

On cross-examination, Sellers admitted that he was terminated from Reefer Systems after failing a drug test. He was questioned regarding his deposition which was taken in 2015, where he had indicated that he may have been able to perform some of his past jobs because they did not involve much lifting or pulling. However, he stated that he could not do such jobs at the time of trial.

Following the hearing, the compensation court entered an award granting Sellers permanent total disability benefits. The court found that the presumption of correctness afforded to Schmidt's loss of earning capacity opinion was rebutted. Specifically, the court noted that Sellers was on narcotics and Schmidt "failed to address the adverse effects that Oxycontin and/or any scheduled drug would have on whether or not an employer would hire [Sellers]." Additionally, the court stated that Schmidt did not have Beard's July 2017 letter when he wrote his report. Finally, Sellers' limited ability to stand, sit and walk, also rebutted Schmidt's report. The compensation court concluded that Sellers was an odd-lot employee, and thus was entitled to permanent total disability benefits. Reefer Systems timely appealed.

## ASSIGNMENTS OF ERROR

Reefer Systems assigns, consolidated and restated, that the compensation court erred in finding (1) the presumption of correctness afforded to Schmidt's report was rebutted and (2) Sellers was an odd-lot worker and thus entitled to permanent total disability benefits.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018).

Determinations by a trial judge of the compensation court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of

the evidence. *Id*. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

## ANALYSIS

*Presumption of Correctness*.

Reefer Systems argues that the compensation court erred in finding that the presumption of correctness afforded to Schmidt's report pursuant to Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010) was rebutted. We disagree.

Under § 48-162.01(3), a loss of earning power opinion rendered by a vocational rehabilitation counselor selected by the parties or appointed by the court is entitled to a rebuttable presumption of correctness. A rebuttable presumption is generally defined as a presumption that can be overturned upon the showing of sufficient proof. *Kaiser v. Metropolitan Util. Dist., supra*. In all cases not otherwise provided for by statute or by the Nebraska Rules of Evidence, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence. *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999). This rule applies to the rebuttable presumption that an opinion regarding loss of earning capacity expressed by a vocational rehabilitation counselor appointed or selected pursuant to § 48-162.01(3) is correct. *Variano v. Dial Corp., supra*.

The Nebraska Supreme Court has held that in determining whether the presumption contained in § 48-162.01(3) has been rebutted, the judge is required to make factual findings. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Findings of fact made by a compensation court in an original hearing have the effect of a verdict and are not to be disturbed on appeal unless clearly wrong. *Romero v. IBP, inc.*, 9 Neb. App. 927, 623 N.W.2d 332 (2001).

Here, the compensation court made factual findings indicating that the presumption of correctness afforded to Schmidt's loss of earning capacity opinion was rebutted. Specifically, the court cited to Sellers' use of prescription narcotics, the continued recommendation that Sellers undergo spine surgery, and Sellers' testimony regarding his limitation to stand, walk, and sit, which the court found credible. The record supports the court's finding that these factors rebut Schmidt's opinion that Sellers sustained a 35- to 40-percent loss of earning capacity. Sellers testified that he uses Oxycodone on a daily basis and that it makes him "droggy." The continued recommendation for spine surgery was made by Beard in his July 2017 letter, a copy of which Schmidt did not have. According to that letter, Sellers' low back pain had worsened to the point where he could walk only two blocks. His subjective complaints were confirmed by a June 2017 MRI which Beard stated was significant for stenosis. Since this imaging was performed after Schmidt's report, it is obvious he did not have it at the time of his report. These factors, combined with Sellers' age, education, and past work experience, support the court's finding that the presumption of correctness was rebutted. See *Frauendorfer v. Lindsay Mfg. Co., supra*

- 4 -

(presumption of correctness afforded to loss of earning capacity report rebutted when report did not contain most recent medical information about claimant).

While the record supports the compensation court's factual findings, we note that the court also seemed to rely on its own personal knowledge or beliefs regarding the hiring practices of employers. It stated that Schmidt "failed to take into account that employers do not hire someone who is on narcotics." As to Beard's letter, the court stated that "had [Schmidt] had the recommendation from Dr. Beard, he would have taken into consideration Dr. Beard's recommendations and maybe considered whether or not anyone would hire an individual who was currently scheduled for surgery, or at least working under a recommendation for surgery of the low back." The court went on to opine that "[e]mployers do not hire a prospective employee if the person is on narcotics and/or has an ongoing recommendation for low back surgery."

Although we agree with Reefer Systems that there was no evidence presented at trial regarding the hiring practices of employers, the court's factual finding that Sellers had suffered a 100 percent loss of earning capacity is supported by the record, resulting in a rejection of Schmidt's conclusion that the loss of earning capacity was between 35 and 40 percent. See *Romero v. IBP, inc.*, 9 Neb. App. 927, 623 N.W.2d 332 (2001).

Reefer Systems argues that the compensation court erred in finding that the presumption was rebutted by relying on Sellers' own testimony regarding the effects of Oxycodone, and not the opinion of a medical expert. However, Sellers was in the best position to testify regarding the effect the medication had on him. The compensation court does not need to depend on expert testimony to determine the degree of disability, but instead may rely on the testimony of the claimant. *Romero v. IBP, inc., supra*.

Reefer Systems also asserts that the Americans with Disabilities Act and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1107.02 (Cum. Supp. 2018), prevents employers from discriminating against prospective employees who use prescribed medications; therefore, Sellers' use of Oxycodone would not be a barrier to employment. Although employers may not discriminate against Sellers based on his use of prescribed Oxycodone, if its effects hamper his ability to perform the job, then his employability is diminished.

Reefer Systems argues that Schmidt was aware that back surgery was an option for Sellers at the time he created his report; therefore, there is no indication that he did not take that into consideration when rendering his opinion. It further contends that the recommendation does not affect earning capacity, nor can a prospective employer inquire into disability during the application process. However, the import of Beard's recommendation for surgery in July 2017 is that Sellers' condition continued to worsen after the date of Schmidt's report, both in Sellers' subjective complaints and in objective imaging results.

When the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Accordingly, because this is a question of fact and there is sufficient evidence to support the conclusion that Schmidt's opinion as to Sellers' loss of earning power was rebutted, we find that the compensation court did not clearly err in finding as such.

*Permanent Total Disability.*

Reefer Systems also argues that the compensation court erred in finding that Sellers was an odd-lot worker, and was therefore entitled to permanent total disability benefits. We find that the record supports the compensation court's findings.

Whether a plaintiff in a Nebraska workers' compensation case is totally and permanently disabled is a question of fact. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Total and permanent disability contemplates the inability of the worker to perform any work which he or she has the experience or capacity to perform. *Hostetler v. First State Bank Nebraska*, 24 Neb. App. 415, 889 N.W.2d 123 (2016). See, also, *Frauendorfer v. Lindsay Mfg. Co., supra*. Total disability does not mean a state of absolute helplessness. It means that because of an injury, (1) a worker cannot earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform or (2) the worker cannot earn wages for any other kind of work which a person of his or her mentality and attainments could do. *Hostetler v. First State Bank Nebraska, supra*.

Here, the compensation court found that Sellers was an odd-lot employee, and was entitled to permanent total disability benefits. Under the odd-lot doctrine, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. *Hostetler v. First State Bank Nebraska, supra*. The essence of the test is the probable dependability with which a claimant can sell his or her services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his or her crippling handicaps. *Id.*

The record supports the compensation court's findings that Sellers was an odd-lot employee. At the time of trial, Sellers was 68 years old. He had a high school education, and attended one year of college. Additionally, Sellers was undergoing treatment for prostate cancer, was in need of a back surgery, and was dependent on Oxycodone to make it through the day. Sellers testified that he could sit or stand for only a half hour at a time before he must move around, and that he is unable to do much activity around his house because of the pain in his back.

Further, the record shows that Sellers has not worked since 2009 and was primarily employed in manual labor jobs before his injury. Sellers testified that he is physically unable to perform manual labor jobs due to his back pain. He explained that he is unable to bend, stoop, or crawl, and that he does not know how to use technology such as computers and touch screens. Considering Sellers' age, education and training, and physical limitations, it is highly unlikely that he will be able to sell his services in a competitive labor market.

On appeal, Reefer Systems argues that previous reports written by Sellers' doctors, and Sellers' own statements, indicate that he is able to work. It points to a 2010 medical opinion that Sellers could carry up to 20 pounds, could stand, walk, or sit for 6 hours a day, and could occasionally climb, stoop, kneel, crouch or crawl; the 2014 FCE indicating that he could sit for 8 hours, stand for 4 hours with breaks, and walk moderate distances; and Sellers' own reports to his health care providers between 2011 and 2014, that he felt well and was exercising daily. However, later records, including the June 2017 MRI and Beard's July 2017 letter, support Sellers' trial

testimony that he could not sit or stand for more than a half hour, could not walk more than half a mile, and struggled to do household chores. Thus, any evidence that Sellers may have been able to work years before trial was rebutted by current medical evidence and Sellers' testimony at trial, which the court found credible. As the trier of fact, the trial judge determines the credibility of the witnesses and the weight to give their testimony. *Hostetler v. First State Bank Nebraska*, 24 Neb. App. 415, 889 N.W.2d 123 (2016).

Reefer Systems also asserts that Sellers' work history and physical and mental capacity do not prevent him from obtaining employment. It points out that Sellers has worked as a telemarketer, a supervisor for Reefer Systems, a maintenance supervisor and van driver, stocked shelves, and sorted mail. However, Sellers testified that he physically is unable to work at any of these past employments. He also stated that he likely would be unable to work as a telemarketer due to his unfamiliarity with technology. Reefer Systems asserts that Sellers' trial testimony is inconsistent with prior deposition testimony; however, the trial judge is the sole judge of Sellers' credibility and we do not reweigh it on appeal.

In Nebraska, a considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury was constricted by lack of mental capacity or education. This is a sensible result, since it is a matter of common observation that a man whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood. *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008). Sellers falls into this category. He worked at manual labor jobs virtually his entire adult life. Following his injury, he is no longer able to perform the physical movements necessary to perform such work; therefore, given his age and education, he would be at a severe disadvantage in attempting to acquire a new livelihood.

Finally, Reefer Systems asserts that Sellers' use of Oxycodone did not prevent him from having meaningful and detailed conversations during trial, and therefore, would not prevent him from performing work. However, Sellers' testimony was that the medication made him feel "droggy" and hungover. Under our standard of review, we consider the evidence in the light most favorable to Sellers. See *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018). Thus, we find that his use of Oxycodone impedes him in the manner in which he testified.

Whether Sellers is totally and permanently disabled is a question of fact, and when testing the trial judge's findings of fact, we consider the evidence in the light most favorable to the successful party. See *Hostetler v. First State Bank Nebraska, supra*. Therefore, when the evidence is viewed in the light most favorable to Sellers, we conclude that the compensation court did not err in finding him permanently totally disabled.

CONCLUSION

After reviewing the record, we conclude that the compensation court did not err in finding that the presumption of correctness afforded to the loss of earning capacity report had been rebutted and in finding Sellers to be an odd-lot employee and entitled to permanent total disability benefits. We therefore affirm the award of the compensation court.

AFFIRMED.