IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

LA SPISA-KLINE ON BEHALF OF LA SPISA V. MARY LANNING MEM. HOSP.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ELIZABETH LA SPISA-KLINE ON BEHALF OF JAYDEN LA SPISA AND ISABELLA LA SPISA, IN RE THOMAS ZUSAG, M.D., DECEASED, APPELLANT,

V.

MARY LANNING MEMORIAL HOSPITAL, APPELLEE.

Filed December 31, 2024.    No. A-24-219.

Appeal from the Nebraska Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

Jonathan V. Rehm, of Rehm Law Firm, P.C., L.L.O., for appellant.

David A. Dudley and Micah Hawker-Boehnke, of Baylor Evnen, L.L.P., for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

A mother, on behalf of her minor children, sought benefits under the Nebraska Workers' Compensation Act following the death of the children's father, which she claimed resulted from his contraction of COVID-19 while working at a hospital. The Nebraska Workers' Compensation Court granted summary judgment in favor of the hospital, finding that the mother failed to establish a causal connection between the decedent's employment and his death. The mother appealed. We find no genuine issue of material fact, and therefore affirm the order of dismissal.

## BACKGROUND

Elizabeth La Spisa-Kline and Thomas Zusag are the parents of two children. Zusag was a radiation oncologist at the cancer center at Mary Lanning Memorial Hospital (Mary Lanning).

Mary Lanning implemented policies and procedures to address the COVID-19 pandemic, and from August 24 through December 10, 2020, this required employees to wear personal protective equipment including "isolation masks" or "N95 masks." It also required patients to wear masks. Employees were required to self-screen for symptoms, and patients were prescreened for symptoms. During 2020, Mary Lanning isolated patients with COVID-19, and those treating them, from the rest of the hospital to prevent exposure. Zusag worked in a building that was separate from where COVID-19 patients were treated. While caring for patients, Zusag would review items on a computer screen while next to other employees. According to two of his coworkers, Zusag sometimes would not wear his mask, or wear it in a way that did not fully cover his mouth and nose.

On October 16, 2020, Zusag spoke with a physician about complaints of memory loss that he did not feel were significant but that others around him did; he was referred for a neuropsychological evaluation which never took place. On November 10, Zusag expressed confusion in the hospital parking lot and was unable to enter his passwords into a computer. Staff took him to the emergency room where he tested positive for COVID-19. Zusag left the hospital against recommendations but was admitted to the hospital on November 18. He was removed from COVID-19 isolation on November 25. Zusag underwent a rapid decline and ultimately died on June 9, 2021. His cause of death was listed as "vascular dementia."

La Spisa-Kline filed a petition in the compensation court for death benefits on behalf of the children. She alleged that Zusag was exposed to COVID-19 arising out of and in the course and scope of employment with Mary Lanning, and that COVID-19 was an occupational disease for healthcare workers. Mary Lanning filed an answer denying that Zusag's illness was attributable to any accident or occupational disease arising out of or in the course of his employment with Mary Lanning.

In defense of the lawsuit, Mary Lanning hired Thomas Jerome Safranek, a physician who was board certified in internal medicine and infectious disease, to opine on Zusag's death. At the summary judgment hearing, Mary Lanning offered Safranek's affidavit in which he rendered three opinions: Zusag's dementia and eventual death were not caused by COVID-19; Zusag's dementia and eventual death were not accelerated by his contraction of COVID-19; and Zusag did not contract the virus that causes COVID-19 from his work at Mary Lanning. Safranek opined that it was more likely than not that Zusag contracted COVID-19 from his interactions with the general public and not his work at Mary Lanning based upon the high rate of community spread of the virus and the infection control polices implemented by the hospital.

Mary Lanning also offered portions of Zusag's medical records which were received into evidence, as well as an affidavit from a hospital administrator describing the policies and procedures implemented during COVID-19, copies of those policies, and affidavits from two of Zusag's coworkers at the cancer center, both of whom tested positive for COVID-19 shortly after Zusag tested positive. Both employees stated their belief that it was likely that Zusag exposed them to COVID-19, and that they did not believe they exposed him to COVID-19.

La Spisa-Kline offered deposition testimony from these same employees. One employee recalled that a staff member at Mary Lanning told him sometime in October or November 2020, that he had possibly been exposed to COVID-19 and needed to be tested; his test was positive. That employee believed his test was prompted by Zusag's test, because Zusag was absent from

work at the time. The other employee confirmed that on November 11, he was told he needed to test for COVID-19; his test was also positive.

La Spisa-Kline offered an expert opinion from an emergency medicine physician that addressed whether Zusag's death was a result of COVID-19. This expert was specifically asked to "comment on whether the death of Dr. Zusag on June 9, 2021 was the result of Covid-19." La Spisa-Kline also offered discovery responses reflecting that eight employees at Mary Lanning tested positive for COVID-19 between November 10 and November 25, 2020.

The compensation court found that Mary Lanning's evidence was sufficient to shift the burden to La Spisa-Kline to show the existence of a material fact. It noted that although this case involved a "novel" virus, La Spisa-Kline's burden of proof remained the same. The compensation court found that La Spisa-Kline had shown that other hospital employees were diagnosed with COVID-19 in November 2020, and that Zusag would occasionally work in close proximity with others; however, this did not, in and of itself, prove an accident or injury arising out of and in the course of employment. Furthermore, it noted that La Spisa-Kline's expert did not opine that Zusag contracted COVID-19 at his workplace. Consequently, the compensation court found that La Spisa-Kline failed to establish by legally competent medical evidence a causal connection between the employment and the alleged injury, and that there were no genuine issues of material fact concerning the right to recover workers' compensation benefits. It granted Mary Lanning's motion for summary judgment and dismissed La Spisa-Kline's petition. La Spisa-Kline appeals.

## ASSIGNMENTS OF ERROR

La Spisa-Kline assigns that the compensation court erred as a matter of law and fact by ruling there was no question of fact that Zusag's exposure to COVID-19 did not arise out of and in the course and scope of his employment with the hospital.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Thiele v. Select Med. Corp.*, 316 Neb. 338, 4 N.W.3d 858 (2024).

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

La Spisa-Kline assigns that the compensation court erred as a matter of law and fact by ruling there was no question of fact that Zusag's exposure to COVID-19 did not arise out of and in the course and scope of his employment with the hospital. We disagree.

The compensation court granted Mary Lanning's motion for summary judgment and dismissed La-Spisa Kline's petition. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts

and that the moving party is entitled to judgment as a matter of law. *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024).

The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were unconverted at trial. *Id*. If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id*. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

La Spisa-Kline's petition for benefits alleged that Zusag's contraction of COVID-19 arose out of and in the course and scope of his employment, and that COVID-19 is an occupational disease for healthcare workers. To show a compensable injury and recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment caused an injury which resulted in disability compensable under the act. See, Neb. Rev. Stat. § 48-101 (Reissue 2021); *Thiele v. Select Med. Corp., supra*. Here, the compensation court determined that La Spisa-Kline failed to establish by legally competent medical evidence a causal connection between Zusag's employment and the alleged injury. We agree with that finding; therefore, we need not determine whether COVID-19 qualifies as an occupational disease. See *Thiele v. Select Med. Corp., supra*.

In support of its motion for summary judgment, Mary Lanning relied on Safranek's opinion which stated that the community spread of COVID-19 in the fall of 2020 was extremely high. Conversely, he opined that the work environment at Mary Lanning posed a substantially lower risk of COVID-19 to Zusag than the risk of exposure from the general public and that there was no evidence to suggest that Zusag's infection was related to exposure at work.

Safranek focused on Mary Lanning's COVID-19 policies and procedures and believed they would have substantially reduced the risk of Zusag's exposure, and that his patients would not have had a higher chance of exposing him than would the general public. Safranek stated that Zusag's risk of contracting COVID-19 was substantially lower at work than it was in the community. Safranek concluded that Zusag, more likely than not, contracted COVID-19 from his interactions with the community outside of work, rather than his work at Mary Lanning. This was sufficient to shift the burden to La Spisa-Kline to show that there was a genuine issue of material fact as to whether Zusag's COVID-19 exposure arose out of and in the course of his employment.

La Spisa-Kline did not present an expert medical opinion related to the source of Zusag's exposure to the virus that causes COVID-19. Her expert opined that COVID-19 caused Zusag's death but did not discuss the source of the exposure. At the summary judgment hearing, La Spisa-Kline's counsel argued that "if people are exposed or are in an environment where they're around lots of people that are positive, then the Court can certainly draw an inference that they got COVID that way, and it's reasonable to do so."

On appeal, La Spisa-Kline argues that she presented evidence from coworkers about the close working conditions, and that these coworkers tested positive for COVID-19 "at or about the

same time" as Zusag. Brief for appellant at 12. She contends that there is a question of fact as to whether Zusag's exposure to COVID-19 was occupational. We disagree.

Safranek provided his expert medical opinion that it was more likely than not that Zusag contracted COVID-19 from his interactions with the community rather than at work. To refute this opinion, La Spisa-Kline presented evidence that people Zusag worked with also contracted COVID-19 around the same time he did. She presented no expert opinion that Zusag's work was the likely source of his exposure. Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability. *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018). Even viewing the evidence that some of Zusag's coworkers tested positive at or near the same time in the light most favorable to La Spisa-Kline, without more, it is insufficient to create a genuine issue of material fact as to whether Zusag's exposure to COVID-19 arose out of and occurred in the course of his employment. As acknowledged in 4 Arthur Larson et al., Larson's Workers' Compensation Law, § 51.06[2] at 51-14 (2023), "The difficulty in establishing the COVID-19 claim is in the proof. With the disease so pervasive in society, how does the claimant establish that he or she became infected through the employment?"

We recognize that the compensation court made its decision prior to the release of *Thiele v. Select Med. Corp.*, 316 Neb. 338, 4 N.W.3d 858 (2024). However, in *Thiele*, the issue was whether COVID-19 was an occupational disease and not whether the employee had been exposed to COVID-19 through her employment. The court specifically noted that there "seem[ed] to be no dispute for purposes of summary judgment that [the employee] contracted COVID-19 at her place of employment [] during the March and April 2020 period." *Id*. at 351, 4 N.W.3d at 867. Here, however, that is the very issue presented to this court. We do not read *Thiele* to require a different outcome.

Mary Lanning provided an expert medical opinion that Zusag did not contract the virus that causes COVID-19 from his work at Mary Lanning. La Spisa-Kline provided no expert evidence to refute this, and she failed to establish that there was a genuine issue of material fact on this issue. On the evidence presented, the compensation court did not err in granting Mary Lanning's motion for summary judgment.

CONCLUSION

We find there was no genuine issue of any material fact relating to the source of Zusag's COVID-19 exposure. We affirm the order of the compensation court granting summary judgment in favor of Mary Lanning and dismissing La Spisa-Kline's petition.

AFFIRMED.